1   DOUGLAS R. SCHWARTZ (State Bar No. 98666)
    PETRA M. REINECKE (State Bar No. 154482)
2   SCHWARTZ & CERA LLP
    44 Montgomery Street, Suite 3850
3   San Francisco, California 94104
    Telephone: (415) 956-2600
4   Facsimile: (415) 438-2655

5   Attorneys for Witness
    MAO CAI SUN
6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12   In Re Material Witnesses        )   Case No. 07-90552-MISC-VRW (JCS)
                                      )
13   (M/V COSCO BUSAN)               )   **MOTION FOR RELEASE OF WITNESS**
                                      )   **MAO CAI SUN OR, IN THE**
14                                    )   **ALTERNATIVE, TO COMPEL**
                                      )   **SCHEDULING OF RULE 15**
15                                    )   **DEPOSITION**
                                      )
16                                    )   DATE: September 18, 2008
17                                    )   TIME:  2:00 p.m.
                                      )   CTRM: A, 15th Floor
18   ─────────────────────────────────

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ...................................................................-1-

II.    THE PROGRESSION AND STATUS OF THE CASE.........................-1-

III.   THE MATERIAL WITNESS STATUTE...................................-2-

IV.    THE DETENTION OF INNOCENT WITNESSES IS
       UNCONSTITUTIONAL.........................................................-3-

V.     THE DETENTION OF MATERIAL WITNESSES
       VIOLATES THE FOURTH AMENDMENT'S
       PROHIBITION AGAINST ARRESTS WITHOUT
       PROBABLE CAUSE...............................................................-4-

VI.    THE MATERIAL WITNESS STATUTE VIOLATES
       THE DUE PROCESS CLAUSE OF THE
       FIFTH AMENDMENT...........................................................-9-

VII.   SECTION 3144 VIOLATES THE EIGHTH AMENDMENT...................-13-

VIII.  THE CONTINUED USE OF THE MATERIAL WITNESS
       STATUTE TO DETAIN CAPTAIN SUN IS
       UNCONSTITUTIONAL..........................................................-13-

IX.    THERE IS NO VALID REASON WHY
       CAPTAIN SUN'S DEPOSITION CANNOT
       BE TAKEN FORTHWITH.......................................................-18-

# TABLE OF AUTHORITIES

## CASES                                                                 PAGE

*Addington v. Texas*
441 U.S. 418, 424 (1979)..............................................-5-, -10-, -12-

*Aguilar-Ayala v. Ruiz*
973 F.2d 411, 412, 413, 415 (5th Cir. 1992)...................-16-, -17-, -19-, -20-

*Atwater v. City of Lago Vista*
532 U.S. 318, 354-55 (2001)......................................................... -4-

*Bacon v. United States*
449 F.2d 933 (9th Cir. 1971)................................-5-, -6-, -7-, -8-, -12-

*Brinegar v. United States*
338 U.S. 160, 175 (1949)...........................................................-4-

*Cf. Stack v. Boyle*
341 U.S. 1, 4 (1951).................................................................-11-

*Dunaway v. New York*
442 U.S. 200, 213 (1979)............................................................-8-

*Florida v. Royer*
460 U.S. 491, 501 (1983)............................................................-14-

*Foucha v. Louisiana*
504 U.S. 71, 80 (1992)......................................................... -9-, -10-

*Giordenello v. United States*
357 U.S. 480 (1958).........................................................-7-, -8-

*In re Class Action Application for Habeas Corpus ex rel.*
*All Material Witnesses in the Western District of Texas*
612 F.Supp. 940 (W.D.Tex. 1985)...............................................-15-

*Henry v. United States*
361 U.S. 98, 102 (9159)..............................................................-4-

*Jackson v. Indiana*
406 U.S. 715, 733 (1972).......................................................-10-, -11-

1

# TABLE OF AUTHORITIES
*(Continued)*

2

**CASES**                                                                    **PAGE**

3

*Kansas v. Hendricks*

4

521 U.S. 346, 356 (1997)................................................................-10-

5

*Michigan v. DeFillippo*

6

443 U.S. 31, 37 (1979)...................................................................-4-

7

*Michigan v. Summers*

8

452 U.S. 692, 700 (1981)................................................................-8-

9

*New Jersey v. Misik*

10

569 A.2d 894, 902 (N.J. Super. Ct. Law Div. 1989)......................-12-

11

*Palko v. Connecticut*

12

302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288, 292 (1937)...........-9-

13

*Schall v. Abrams*

14

467 U.S. 253, 270 (1984)...............................................................-11-

15

*Sibron v. New York*

16

392 U.S. 40, 75 (1968) (Harlan.J., concurring)...............................-4-

17

*Spears v. Stewart*

18

283 F.3d 992, 998-99 (9th Cir. 2002)..............................................-6-

19

*State v. Hernandez-Lopez*

20

639 N.W.2d 226, 239 (Iowa 2002)..................................................-12-

21

*Terry v. Ohio*

22

392 U.S. 1, 19 (1968)......................................................................-4-

23

*Torres-Ruiz v. U.S. District Court*

24

120 F.3d 933, 933, 935 (9th Cir. 1997)...............................-17-, -19-

25

*United States v. Allie*

26

978 F.2d 1401 (5th Cir. 1992)........................................................-16-

27

*United States v. Awadallah*

28

349 F.3d 42, 62 (2d Cir. 2003)................-11-, -13-, -14-, -15-

*United States v. Bell*

524 F.2d 202, 206 n.4 (2d Cir. 1975)...............................................-6-

## TABLE OF AUTHORITIES
*(Continued)*

**CASES**                                                                          **PAGE**

*United States v. Dragoul*
1 F.3d 1546, 1554 (11th Cir. 1993)...................................................................-21-

*United States v. Eufracio-Torres*
890 F.2d 266, 269 (10th Cir. 1989)..................................................................-20-

*United States v. Henderson*
961 F.2d 880, 882 (9th Cir. 1992).....................................................................-6-

*United States v. Jessup*
757 F.2d 378 (1st Cir. 1985)............................................................................-11-

*United States v. Lai Fa Chen*
214 F.R.D. 578.................................................................-17-, -19-, -20-

*United States v. Lai Fa Chen*
214 F.R.D. 578, 579 (N.D.Cal. 2003)..............................................................-17-

*United States v. Moore*
26 F. Cas. 1308, 1309 (C.C.D.Pa. 1801) (No. 15, 805) (opinion of Griffith, C.J.)..........-3-

*United States v. Rivera*
859 F.2d 1204, 1205-1206 (4th Cir. 1988).......................................................-17-

*United States v. Salerno*
481 U.S. 739, 745 (1987)..........................................-3-, -9-, -10-, -11-

*United States v. Salerno*
481 U.S. 739, 745, 746, 107 S. Ct. 2095, 2101, 95 L. Ed. 2d 697, 708 (1987)..............-9-

*Zadvydas v. Davis*
533 U.S. 678 at 691, 690 (2001)...........................................-10-, -11-

## STATUTES

**PAGE**

18 U.S.C. § 3142; S. Rep. No. 98-225, 1984 U.S.C.C.A.N., at n.100 (Aug. 4, 1983).......-11-

22 U.S.C. § 2304(d)(1)...................................................................-10-

Act of September 29, 1789, ch. 20, § 33, 1 Stat. 23, 91.......................................-7-

Art. 2(1) of the International Covenant on Civil and Political Rights.......................-12-

Fed. R. Crim. P. 15(a)...........................................................-19-, -20-

Fed. R. Crim. P. 46(g) (1993).....................................................-15-

Fed. R. Crim. P. 46(h)(2) (2003)..................................................-15-

Federal Rules of Criminal Procedure........................................-3-, -8-, -15-

Judiciary Act of 1993, § 33.........................................................-7-

Rule 46 and 46(b).............................................................-6-, -7-

The Fifth Amendment Due Process Clause.....................................-9-, -10-

Title 18 U.S.C. §3142.......................................................-2-, -11-, -14-

Title 18 U.S.C. §3144.........2-, -3-, -7-, -8-, -9-, -12-, -13-, -15-, -16-, -17-,  -19-, -20-, -21-

Title 18 U.S.C. §3149.........................................................-6-, -7-

United States Constitution, Amend. VIII.........................................-13-, -21-

1

## I.

2

## INTRODUCTION

3    In accordance with the schedule set by the Court at the last hearing of this matter on

4    August 7, 2008, Captain Mao Cai Sun submits this brief in support of his position that his

5    continued detention in the United States is unlawful, and that his deposition should be taken

6    forthwith and he be permitted to return home.  The deposition of Captain Sun has been requested

7    and tentatively scheduled on several occasions.  Yet at this point in time, almost ten months after

8    the allision which forms the subject matter of his anticipated testimony, no date is set for Captain

9    Sun's deposition, and it is anticipated that one or both of the defendants will either oppose its

10   being taken at all, or submit that it cannot be scheduled yet.  The government has stated that it

11   will not take a position as to whether and when Captain Sun's deposition should be taken, but it

12   is the government that is detaining him here under a material witness warrant, and it is the

13   government's charging decisions and delays in providing discovery that have primarily caused

14   Captain Sun to remain here without having his deposition taken.  The end result for Captain Sun

15   is that he continues to remain here without any limits on his continued detention in the United

16   States, and with the prospect of being forced to remain here for at least several more months.  He

17   has now been detained here for ten months, with no prospect of being permitted to leave before

18   the anniversary of his arrival in the United States.  This incredibly long detention of a foreign

19   national who has not been accused of any crime is unheard of and violates his constitutional

20   rights.  Captain Sun's continued detention here is unlawful, and must be remedied forthwith.

21

22

## II.

23

## THE PROGRESSION AND STATUS OF THE CASE

24   The government has elected to prosecute this case in a kind of serial progression.  A

25   complaint against defendant Cota was filed on March 17, 2008, more than four months after the

26   allision with the San Francisco Bay Bridge pier.  The complaint was followed on April 22, 2008

27   by the filing of an indictment against Mr. Cota adding two felony false statement counts,

28

-1-

1  involving charges which have nothing really to do with the Captain or the crew.  It was not until

2  July 22, 2008 that an indictment was filed against Captain Sun's employer, Fleet Management.

3  Without engaging in the largely irrelevant exercise of examining what the government knew or

4  should have known at what point in time relevant to its charging decisions, the bottom line is that

5  this case (at least for a case involving six material witnesses who have been detained here) has

6  proceeded incredibly slowly and, at a time when the anniversary of the allision nears, any

7  realistic trial date is most likely some six months away.  The parties in fact contend that

8  discovery is still in its early stages.  Captain Sun and the other witnesses, the people who are

9  most directly prejudiced by the delays in this case, have no control over the progress of the case

10  and continue to sit by helplessly as the parties argue about how much more time, what discovery,

11  and how many experts they need to retain in order to even begin to prepare for taking depositions

12  (or trial).  The situation of the material witnesses, foreign nationals who have been forced to

13  remain on the other side of the world from their families, friends, homes and lives for almost a

14  year now is simply unacceptable and cannot be permitted to continue.  They have lost almost one

15  year of their lives, and the fact that they continue to languish here does not comport with

16  American and international standards of fairness and justice.  If it were American citizens being

17  held in China under similar circumstances, it is difficult to believe our country would sit idle and

18  mute and do nothing to rectify the situation.

19

20                                          **III.**

21                          **THE MATERIAL WITNESS STATUTE**

22      Title 18 U.S.C. §3144 governs the release or detention of a material witness.  The statute

23  provides:

24      If it appears from an affidavit filed by a party that the testimony of a person is
         material in a criminal proceeding, and if it is shown that it may become
25      impracticable to secure the presence of the person by subpoena, a judicial officer
         may order the arrest of the person and treat the person in accordance with the
26      provisions of section 3142 of this title. No material witness may be detained
         because of inability to comply with any condition of release if the testimony of
27      such witness can adequately be secured by deposition, and if further detention is

28                                           -2-

not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of a witness can be taken pursuant to the Federal Rules of Criminal Procedure.

The unique feature of the material witness statute is that it authorizes the arrest and detention of individuals who have not and are not even suspected of committing any crime. This is an anomaly in the criminal laws of the United States. As further discussed below, the statute is unconstitutional on its face and as applied.

## IV.

### THE DETENTION OF INNOCENT WITNESSES IS UNCONSTITUTIONAL

As one court observed over two centuries ago: "It is contrary to the first principles of natural justice, to imprison men who are innocent, merely because they are too poor and friendless to find bail for their appearances as witnesses. If the United States may imprison witnesses, so may the party accused, and a whole ship's crew might lay in gaol for six months or a year." *United States v. Moore*, 26 F. Cas. 1308, 1309 (C.C.D.Pa. 1801) (No. 15, 805) (opinion of Griffith, C.J.) While Captain Sun and the other material witnesses in this case do not "lay in gaol," they have clearly been detained here. They are not free to depart the United States to return to their homes, their families and their jobs, but instead are forced to sit here in hotel rooms until forces beyond their control finally permit them to return home.

"No federal court, no prosecutor, no agent has the authority to imprison a witness who promises to discharge his or her duty to testify. The prevailing assumption both before and after the terrorist attacks of September 11th that witnesses can be held in prison without provision of bail they can meet has no legal foundation." Ricardo J. Bascuas, THE UNCONSTITUTIONALITY OF "HOLD UNTIL CLEARED": REEXAMINING MATERIAL WITNESS DETENTIONS IN THE WAKE OF THE SEPTEMBER 11TH DRAGNET, 58 Vanderbilt Law Review 677, 735-736 (2005).

Section 3144 is facially unconstitutional because "no set of circumstances exists under which it is legitimate to arrest someone who has not committed and is not committing a crime." *See United States v. Salerno*, 481 U.S. 739, 745 (1987).

-3-

1

## V.

## THE DETENTION OF MATERIAL WITNESSES VIOLATES THE FOURTH
## AMENDMENT'S PROHIBITION AGAINST ARRESTS WITHOUT PROBABLE CAUSE

The Fourth Amendment requires that "probable cause" be shown for every arrest. "Probable cause" means, and has always meant, a reasonable ground for believing that the individual to be arrested was guilty of the commission of a crime.  Probable cause to justify an arrest means facts and circumstances within an officer's knowledge that are sufficient to warrant a prudent person to believe that, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. *See, e.g., Henry v. United States*, 361 U.S. 98, 102 (9159); *Sibron v. New York*, 392 U.S. 40, 75 (1968) (Harlan.J., concurring); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001). The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. *Brinegar v. United States*, 338 U.S. 160, 175 (1949).  In the case of a material witness who has merely witnessed a crime, however, probable cause that the individual has committed a crime, by definition, is absent, and in fact turns the definition of probable cause on its head.

The general rule is that seizures not based on probable cause to believe that the arrestee committed a crime are unreasonable under the Fourth Amendment.  While there are some exceptions to that general rule, none of them justify the detention of innocent witnesses in a criminal case prosecuted by civilian authorities.  The exceptions in the criminal context (as opposed to, for example, civil commitment of the mentally ill or infectious) all relate to, and are based upon, either brief and minimally intrusive seizures such as investigatory *Terry*[1] stops, airport and car searches, or in extreme and controversial circumstances such as the internment of persons of Japanese ancestry during the Second World War and the detention of "enemy aliens." Further, all of the exceptions were premised on the notion that the detainees posed at least a

[1]    *See Terry v. Ohio*, 392 U.S. 1, 19 (1968).

-4-

1    potential danger to the community or the nation.[2]  The detention of individuals on the basis that

2    they may have information relevant to an investigation but are not themselves dangerous has no

3    basis or precedent.

4         The constitutionality of the material witness statute has never been subjected to close

5    constitutional analysis.  On the contrary, it has long been *assumed* that the statute is

6    constitutional, based mainly on the fact that it has been on the books for a long time yet rarely

7    used until recently.  In fact, cases which have discussed the material witness statute have merely

8    assumed its constitutionality.  The case most relied on to support the notion that the detention of

9    material witnesses passes constitutional muster is the Ninth Circuit case of *Bacon v. United*

10   *States*, 449 F.2d 933 (9th Cir. 1971).  However, as explained below, the constitutional analysis

11   contained in the decision is purely dicta.

12        In *Bacon*, the petitioner was arrested as a material witness to a grand jury proceeding in

13   Seattle.  *Id.* at 935.  The government alleged that Leslie Bacon "had personal knowledge of

14   matters material to a grand jury investigation and that a subpoena would be ineffective in

15   securing her presence."  *Id.* at 934.  Bacon was ordered imprisoned unless she posted bail of

16   $100,000, which she was unable to do.  *Id.* at 934-935.  On petition for writ of habeas corpus,

17   Bacon argued that her detention was illegal.  *Id.* at 935-936.  The district court denied the writ.

18   *Id.*

19        On appeal, the Ninth Circuit reversed.  "Such an arrest as we have here," the Ninth Circuit

20   stated, "has no history of judicial or public acceptance."  *Id.* at 942.  The court concluded that the

21   "writ was erroneously denied" because there was no showing of "probable cause" to support the

22   finding that "Bacon could not practicably be brought before the grand jury by a subpoena."  *Id.* at

23   945.  Accordingly, the court reversed the order "with directions to quash the warrant of arrest,

24

25

26   [2]    *See, e.g., Addington v. Texas*, 441 U.S. 418 (1979) (affirming states' power to
institutionalize dangerous mentally ill people both to provide care and to protect the community).

27

28                                -5-

1    including the order fixing bail." *Id.*

2         Rather than limit its analysis to this holding, however, the *Bacon* court discussed at length

3    the issue of whether grand jury witnesses may be lawfully detained.  Bacon had argued that the

4    government had no power to detain her to ensure her appearance before a grand jury before she

5    had disobeyed a subpoena. *Id.* at 935-936.  The court rejected Bacon's arguments,[3] finding that

6    the government could arrest and detain her even though she had never been subpoenaed. *Id.* at

7    944-945.

8         However, as noted above, the court granted the petition on the basis that the government

9    had failed to show that securing Ms. Bacon's appearance by subpoena was impracticable. *Id.* at

10   944-945.  Thus, all of Bacon's discussion and constitutional conclusions as to the legality of the

11   material witness statute were unnecessary to the court's holding and therefore dicta. *See, e.g.,*

12   *United States v. Henderson*, 961 F.2d 880, 882 (9th Cir. 1992) (defining dicta as language that is

13   "unnecessary to [the court's] holding").[4]  The Ninth Circuit expressly refused to address the

14   argument that Bacon's arrest and detention violated the Constitution because it stated that Bacon

15   had not cited any provision of the Constitution or case authority which supported her claim of

16

17   ───────────────

18   [3]     Bacon advanced three specific arguments in support of her position.  First, she claimed
     that neither section 3149 (the predecessor statute to section 3144) nor Rule 46 expressly granted
     to the court the power to arrest or detain a witness because they only provided for a witness's
19   release. *Id.* at 939.  Second, although "both § 3149 and Rule 46(b) apply expressly to 'any
     criminal proceeding,'" Bacon argued "that a grand jury investigation is not a criminal
20   proceeding" and therefore she could not be detained for having information allegedly pertinent to
     a grand jury investigation. *Id.*  Third, "Bacon further claimed that arrest and detention of
21   material witnesses, not suspected of wrongdoing, is forbidden by the Constitution." *Id.* at 941.

22   [4]     *See also United States v. Bell*, 524 F.2d 202, 206 n.4 (2d Cir. 1975) ("Even viewing it as
     well-considered or judicial dictum [by the Supreme Court], we are not necessarily bound to
23   follow it.").  *But compare Spears v. Stewart*, 283 F.3d 992, 998-99 (9th Cir. 2002)(Reinhardt, J.,
     dissenting from denial of rehearing en banc) ("The panel's statement . . . is clearly unnecessary to
24   its resolution of the case, does not affect its outcome in any manner, and constitutes an advisory
     opinion. . . . The contents of that portion of the panel opinion are entirely dicta.") with *id.*, 283
25   F.3d at 1006-07 (Kozinski, J., filing statement concerning denial of petitions for rehearing en
     banc) ("So long as the issue is presented in the case and expressly addressed in the opinion, that
26   holding is binding and cannot be overlooked or ignored by later panels of this court or by other
     courts of the circuit. . . . Let no one be misled by Judge Reinhardt's ruminations to the
27   contrary.").

28                                          -6-

1   unconstitutionality. *Bacon*, 449 F.2d at 941. "Because this issue has been presented in a

2   perfunctory manner, without adequate briefing and argument, we decline to rule upon it at this

3   time." *Id.*

4          Despite declining to address the constitutional question, the *Bacon* court engaged in a

5   flawed analysis of the supposedly long-standing practice of arrest and detention of "material

6   witnesses"[5] to proclaim its constitutionality.   Further, it delineated a new standard of probable

7   cause applicable to material witnesses.  In order to remedy the fact that the usual probable cause

8   standard could not be applied, the Ninth Circuit in *Bacon* invented a new standard to fit the

9   circumstances, finding that former section 3149 (now section 3144) and Rule 46(b) required not

10  probable cause of guilt, but simply proof that the testimony of the witness was material and "that

11  it may become impracticable to secure his presence by subpoena."[6]

12         The only case which the Bacon court used to support its redefinition of probable cause

13  was *Giordenello v. United States*, 357 U.S. 480 (1958).  The *Giordenello* case, which involved an

14  appeal of a drug conviction on the basis that the complaint underlying the arrest warrant lacked

15  sufficient detail to enable a judicial officer to determine whether there was probable cause for his

16  arrest, actually rejected the notion that probable cause could be redefined on a case-by-case basis.

17

18

19  [5]   The Bacon court incorrectly believed that the power to imprison innocent witnesses dated to
    the time of the Founding Fathers.  In fact, the court misinterpreted section 33 of the Judiciary Act
20  of 1933, which permitted arrest of witnesses only for disobedience of a promise to appear, and
    could require of a witness only a promise to appear before such disobedience.  Because witnesses
21  had a duty to testify, courts could compel them only to promise to appear to give testimony, not
    to give a bond.  Witnesses, unlike offenders, were not subject to arrest, imprisonment, or bail
22  under the First Judiciary Act.  See Act of September 29, 1789, ch. 20, § 33, 1 Stat. 23, 91 ("That
    for any crime or offence against the United States, the offender may . . be arrested, and
23  imprisoned or bailed, as the case may be, for trial . . . . And copies of the process shall be
    returned as speedily as may be into the clerk's office of such court, together with the
24  recognizances of the witnesses for their appearance to testify in the case . . . . And if such
    commitment of the offender, or the witnesses shall be in a district other than that in which the
25  offence is to be tried, it shall be the duty of the judge . . . [to issue] a warrant for the removal of
    the offender, and the witnesses, or either of them, as the case may be, to the district in which the
26  trial is to be had.")

    [6]   This new standard was later codified in the new section 3144.
27

28                                                    -7-

1    In finding that the complaint in *Giordenello* violated the Rules of Criminal Procedure because it

2    was not, in fact, sufficient to offer a basis for making the probable cause determination required

3    by the Fourth Amendment, Justice Harlan noted that the Rules "must be read in light of the

4    constitutional requirements that they implement." In other words, Justice Harlan noted merely

5    that the rules must be interpreted consistently with the rights that the Fourth Amendment

6    safeguards. The *Bacon* court, however, took Justice Harlan's comment to mean that the

7    definition of probable cause changes with the circumstances of a given case. The *Bacon* court

8    concluded that the Fourth Amendment is satisfied whenever the statutory conditions are met,

9    because the statutes provide specific criteria for probable cause. This reasoning of course would

10   mean that Congress could alter the definition of probable cause by statute, a result which would

11   eviscerate the constitutional protections against arbitrary arrests contained in the Fourth

12   Amendment.

13          As one commentator has noted, "if *Bacon* was wrongly decided, the practice of detaining

14   innocent witnesses under Section 3144 is left without any legal foundation. Not only have

15   federal courts relied on and followed *Bacon* in assessing the constitutionality of 'material

16   witness' detentions, but the legislative history of Section 3144 cites *Bacon* as the exclusive legal

17   authority for the statute." Bascuas, 58 Vanderbilt Law Review at 703-704. Despite its flawed

18   analysis, and the fact that its analysis constitutes *dicta*, the *Bacon* court's holding that the

19   government could lawfully arrest and detain Ms. Bacon has served as precedent for acceptance of

20   the notion that the material witness statute is constitutional.

21          Put simply, firmly established Fourth Amendment doctrine requires that every significant

22   detention must be supported by probable cause to believe that the detainee was involved in the

23   commission of a crime. *See, e.g. Michigan v. Summers,* 452 U.S. 692, 700 (1981) ("every arrest,

24   and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is

25   supported by probable cause); *Dunaway v. New York,* 442 U.S. 200, 213 (1979) (an exception

26   that could cover an intrusive seizure would threaten to swallow the general rule that Fourth

27   Amendment seizure are reasonable only if based on probable cause). Probable cause under its

28

1    firmly established meaning cannot be satisfied for a material witness, because where the witness

2    is innocent, there can be no probable cause to believe that the prospective arrestee has committed

3    a crime. A statute that permits the detention of innocent witnesses violates the Fourth

4    Amendment.

5

6                                                  **VI.**

7    **THE MATERIAL WITNESS STATUTE VIOLATES THE DUE PROCESS CLAUSE OF**

8                                    **THE FIFTH AMENDMENT**

9            Two individual interests are protected by the due process clause. *United States v. Salerno*,

10   481 U.S. 739, 746, 107 S. Ct. 2095, 2101, 95 L. Ed. 2d 697, 708 (1987). The first, substantive

11   due process, prevents the government from interfering with "rights 'implicit in the concept of

12   ordered liberty.'" *Id.* (quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 152, 82 L.

13   Ed. 288, 292 (1937)). The second, procedural due process, requires government action resulting

14   in the deprivation of a liberty interest to be implemented in a fair manner. *Id.* The material

15   witness statute violates both interests. It violates substantive due process because it permits the

16   government to deprive individuals of their right to liberty without any indication, or even

17   allegation, of their guilt. Further, section 3144 violates procedural due process because it

18   authorizes the government to deprive innocent individuals of their liberty based on arbitrary

19   criteria lacking any relationship to the ends of the statute it is meant to achieve. *See Salerno*, 481

20   U.S. at 745.

21           "Freedom from bodily restraint has always been at the core of the liberty protected by the

22   Due Process Clause...." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The Supreme Court has

23   stated that a statute which permits indefinite detention of people, except in such cases as a

24   criminal conviction or a finding that a person poses a threat to himself or others as the result of

25   mental illness, would raise a serious constitutional problem under the Due Process Clause.

26

27

28

SUBMISSION BY MATERIAL WITNESS CAPTAIN MAO CAI SUN IN SUPPORT OF RELEASE
Case No. 07-90552-MISC-VRW (JCS)

1    *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).[7] Accordingly, the Due Process Clause of the Fifth

2    Amendment requires stringent safeguards to ensure against arbitrary deprivations of physical

3    liberty. The Fifth Amendment's Due Process Clause allows civil detention only where a "special

4    justification" is "sufficiently weighty" to overcome an individual's "interest in avoiding physical

5    restraint," where the scope and nature of that detention "is not excessive" to its purpose, and is

6    subject to the strictest procedural safeguards. *See id.*; *United States v. Salerno*, 481 U.S. at 746.

7    In *Zadvydas*, the Supreme Court held:

8    > [G]overnment detention violates [the Fifth Amendment's Due Process] Clause
9    > unless the detention is ordered in a criminal proceeding with adequate procedural
     > protections, or, in certain special and "narrow" nonpunitive "circumstances,"
     > where a special justification, such has harm-threatening mental illness, outweighs
10   > the "individual's constitutionally protected interest in avoiding physical restraint."

11   *Zadvydas*, 533 U.S. at 690 (citing *Salerno*, 481 U.S. at 746; *Foucha v. Louisiana*, 504 U.S. 71, 80

12   (1992); *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). The Supreme Court has sanctioned

13   nonpunitive detention only in a few very limited circumstances. *See Zadvydas*, 533 U.S. 678

14   (detention of alien deportees permissible only so long as deportation is reasonably foreseeable);

15   *Salerno*, 481 U.S. at 749 (pretrial detention of narrow category of criminal defendants solely on

16   the basis of dangerousness only with strict procedural protections); *Addington v. Texas*, 441 U.S.

17   418 (1979) (detention permissible only where government shows by clear and convincing

18   evidence mental illness *and* danger to self or others); *Jackson v. Indiana*, 406 U.S. 715 (1972)

19   (detention of criminal defendant solely on account of his incompetency to stand trial, without

20   finding that defendant was mentally ill and dangerous violated due process).

21       If the detention of a material witness is to comport with constitutional strictures, it must be

22   conditioned on strong procedural safeguards. In *Salerno* the Supreme Court allowed pretrial

23   detention of defendants charged with serious crimes only after "stress[ing] 'stringent time

24   limitations,' the fact that detention is reserved for the 'most serious of crimes,' the requirement of

25

26   _____

     [7]    In addition, Congress has declared that prolonged detention without charges and trial is a
27   gross violation of human rights. 22 U.S.C. § 2304(d)(1).

28
SUBMISSION BY MATERIAL WITNESS CAPTAIN MAO CAI SUN IN SUPPORT OF RELEASE
Case No. 07-90552-MISC-VRW (JCS)

proof of dangerousness by clear and convincing evidence, and the presence of judicial

safeguards." *Zadvydas v. Davis*, 533 U.S. 678 at 691 (describing and citing *Salerno*, 481

U.S. at 747, 750-752); *see also Schall v. Abrams*, 467 U.S. 253, 270 (1984) (noting maximum

length of dangerousness-based detention of seventeen days for youth suspected of serious crimes

and six for those suspected of less serious crimes); *Jackson v. Indiana*, 406 U.S. at 733 (criminal

defendant incompetent to stand trial may be detained only for "a reasonable period of time

*necessary* to determine whether there is a substantial chance of his attaining the capacity to stand

trial in the foreseeable future") (emphasis added) (internal citations omitted).

Notably, the very safeguards upon which the Court relied in *Salerno* are lacking in the

case of material witnesses, who in any event cannot be detained on the basis of dangerousness.

*See* 18 U.S.C. § 3142; S. Rep. No. 98-225, 1984 U.S.C.C.A.N., at n.100 (Aug. 4, 1983).  First,

there is no set limit on the length of detention.  A witness has no speedy trial rights and is at the

mercy of parties who may decide it is advantageous to postpone trial to gain leverage in plea

bargaining or for strategic defensive reasons.[8]  Second, witness detention is not reserved for the

most serious crimes.  Indeed, the witness is accused of *no* crime.  Thus, the question of flight risk

is different for a witness, who is accused of no wrongdoing, than for a defendant who risks a

guilty verdict and attendant sentencing.  *Cf. Stack v. Boyle*, 341 U.S. 1, 4 (1951) ("The right to

release before trial is conditioned upon the accused's giving adequate assurance that he will stand

trial and submit to sentence if found guilty"); *United States v. Jessup*, 757 F.2d 378 (1st Cir.

1985) (reviewing evidence that accused drug offenders pose a heightened risk of flight).  Third,

the standard of proof applied to material witness detentions is a mere preponderance rather than

the "clear and convincing" standard.  An innocent person not suspected of any crime, however,

---

[8]    As the Second Circuit noted in *Awadallah*:  "[T]he Speedy Trial Act permits delay for
various reasons, see 18 U.S.C. § 3161(h), which may have the collateral effect of extending the
detention of a material witness; and nothing in the Speedy Trial Act requires a court to consider
the effect of a continuance or delay on a detained witness. The Act therefore provides cold
comfort to a detained trial witness." *Id* at 56.

1   should be entitled to at least the standard that is afforded to persons for whom there is probable

2   cause to believe they have committed a serious offense. *See, e.g., New Jersey v. Misik*, 569 A.2d

3   894, 902 (N.J. Super. Ct. Law Div. 1989) ("[A]t the very least a heavy burden of proof should be

4   imposed upon the State whenever it decides it is necessary to seek detention of an innocent

5   person, not even a suspect, much less an accused.") (relying on *Addington v. Texas*, 441 U.S.

6   418, 424 (1979)).

7          Further, the statute is not narrowly tailored to the government's interest because it requires

8   not that the witness will be unavailable for trial, but only that it "**may** be impracticable to secure

9   the witness's presence by subpoena." To comply with due process, a stronger showing of

10  unavailability is required before an individual may be arrested as a material witness. At a

11  minimum, the government must show that there is probable cause to believe the individual **will**

12  be unavailable for trial. *See State v. Hernandez-Lopez*, 639 N.W.2d 226, 239 (Iowa 2002).

13  Moreover, the materiality requirement in the statute is not narrowly tailored and therefore is

14  violative of due process, because the government's mere designation of "material" is sufficient

15  for the detention of a witness under the statute.

16         By the *Bacon* definition of the proof required to satisfy section 3144 (material testimony

17  and "that it may become impracticable to secure [the witness's] presence by subpoena"), <u>every</u>

18  foreign national who, while present in the United States, is unfortunate enough to become a

19  witness to a wrong the United States elects to prosecute, is subject to arrest and detention under

20  the material witness statute. Unless able to afford considerable bail, and perhaps even then,

21  foreign nationals will always satisfy the loose condition that it "may" become impracticable to

22  secure their presence by subpoena – in other words, if they leave the United States to return

23  home.

24         International human rights law forbids states from discriminating on the basis of national

25  origin. Art. 2(1) of the International Covenant on Civil and Political Rights, to which the United

26  States is a signatory, imposes an affirmative duty to respect and ensure that all individuals within

27  its territory and subject to its jurisdiction enjoy the rights recognized in the present Covenant,

28                                                     -12-

1    without distinction of any kind, including on the basis of national origin.  But by being refused

2    release on the basis that they have no ties to this jurisdiction and are not in a position to make

3    adequate assurances that they will return to testify if permitted to return home, the foreign

4    material witnesses are being discriminated against on an impermissible basis, namely their

5    national origin.  The material witness statute cannot, and does not comport with due process.

## VII.

## SECTION 3144 VIOLATES THE EIGHTH AMENDMENT

9    The Eighth Amendment reads, "[e]xcessive bail shall not be required, nor excessive fines

10   imposed, nor cruel and unusual punishments inflicted."  United States Constitution, Amend. VIII.

11   The detention of material witnesses violates the Eighth Amendment Bail Clause because it

12   authorizes conditions of release or detention that are not narrowly tailored to achieve the statute's

13   purpose.  It theoretically permits detention in the same manner and on the same conditions as a

14   defendant accused of a crime.  This detention on the same bases as an accused – namely flight

15   risk and dangerousness to the community – are not narrowly tailored, and in fact do not apply, to

16   a witness not accused of any crime.

## VIII.

## THE CONTINUED USE OF THE MATERIAL WITNESS STATUTE TO DETAIN

## CAPTAIN SUN IS UNCONSTITUTIONAL

21   Even if the statute and procedures for detaining material witness are deemed to be

22   constitutional, the procedure cannot be upheld and continued given the particular circumstances

23   in this case.[9]  It is acknowledged that the allision with the Bay Bridge and the resulting oil spill

---

25   [9]    If the statute is deemed constitutional, it is only because any detention must be limited to a
**reasonable** amount of time, and because there is the alternative of taking the witness's

26   **deposition** rather than detaining them until trial.  *See United States v. Awadallah,* 349 F.3d 42,
62 (2d Cir. 2003).  In *Awadallah,* the Second Circuit found section 3144 constitutional as it

27   applies to material witnesses to grand jury proceedings, because it "sufficiently limits the

*(Footnote continued)*

1    was an accident. Thus this is simply a negligence prosecution as to who was (most) responsible

2    for the accident. And to that end, six men who are not charged with any crime have been forced

3    to remain here in the United States for some ten months, and are likely to remain here far longer.

4    The scope of a detention must be carefully tailored to its underlying justification. *Florida v.*

5    *Royer*, 460 U.S. 491, 501 (1983). It is highly probable that the length of the detention of the

6    material witnesses in this case has already exceeded any period of incarceration which might be

7    imposed on the defendants if they are convicted.[10]  That would simply turn the basic fairness of

8    our judicial system on its head. Given the length of time that has elapsed since Captain Sun and

9    the other witnesses were forced to disembark the Cosco Busan and to remain in San Francisco,

10   their continued detention here and inability to return home to their families and their lives

11   violates their constitutional rights.

12        The material witness statute provides that once arrested, material witnesses are to be

13   treated "in accordance with the provisions of section 3142." Section 3142 is entitled, "Release or

14   detention of a defendant pending trial." Incorporating the standards for the release of defendants

15   pending trial into the material witness statute means that a material witness should be detained

16   only so long as may be necessary to set bail or other conditions. If the witness is unable to satisfy

17   the conditions set for release, then a deposition should be taken forthwith, followed by release.

18        As made clear by the statute, the purpose of a material witness warrant is to detain a

19   witness **for a reasonable period of time,** to obtain or preserve his testimony. The statute itself

21   _____

     infringement upon the witness's liberty and reasonably balances it against the government's
22   countervailing interests." This finding was expressly based on the fact that the statute provided a
     "deposition mechanism" for release of the witness, and also invoked the bail and release
23   provisions set forth in 18 U.S.C. § 3142, under which a person detained as a material witness
     may obtain a hearing on the propriety of his continued detention and the conditions which will
24   allow his release. Further, the *Awadallah* court noted that, while § 3144 contains no express time
     limit, "the statute and related rules require close institutional attention to the propriety and
25   duration of detentions, and there are measures that tend to ensure that material witnesses are
     detained no longer than necessary." *Id.* at 49-58.

27   [10]    Of course Fleet Management, as a business entity, is not subject to imprisonment.

provides that "no material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice." 18 U.S.C. § 3144. Release may be delayed only "for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure." *United States v. Awadallah*, 349 F.3d 42, 62 (2d Cir. 2003).

A review of court rules and decisions indicates strongly that the amount of time that is "reasonable" is very short. First, Federal Rule of Criminal Procedure 46 requires the government to make a "biweekly report" to the court listing each material witness held in custody for more than **ten days** and justifying the continued detention of each witness. Fed. R. Crim. P. 46(g) (1993); *see also* Fed. R. Crim. P. 46(h)(2) (2003).[11] This supports the notion that reasonable detention should be measured in terms of days, not weeks and months, and further that judicial oversight to limit the time that the government detains witnesses must be closely supervised and curtailed.

Further, some district courts instituted standing orders providing that no material witnesses are to be detained beyond a certain length of time unless the government can show that their release would result in a miscarriage of justice. For example, the Western District of Texas, after a class action lawsuit by detained witnesses,[12] promulgated a standing order which provided that upon a motion, "the deposition procedure [for detained witnesses] must be pursued *unless further detention is necessary to prevent a failure of justice* .... In the absence of a District Court ruling that further detention is necessary, any material witness in custody shall be released by the Attorney General of the United States after sixty days of incarceration ...." (emphasis added).

---

[11]    Captain Sun is unaware of whether such reports have been submitted to the Court in this case, and if so, what these reports contain.

[12]    *See In re Class Action Application for Habeas Corpus ex rel. All Material Witnesses in the Western District of Texas,* 612 F.Supp. 940 (W.D.Tex. 1985).

1       In *United States v. Allie*, 978 F.2d 1401 (5th Cir. 1992), the Fifth Circuit found that the

2   Western District's standing order properly implemented 18 U.S.C. § 3144 ("The standing order's

3   time limitation gives meaning to the § 3144 requirement that depositions of detained witnesses be

4   taken within a 'reasonable period of time.' The Western District's standing order defines

5   'reasonable time' as sixty days. Except for the time limitation, the standing order provides the

6   trial court with essentially the same degree of discretion in the resolution of individual cases as §

7   3144, i.e., determining whether a failure of justice would result if the depositions were taken and

8   the witnesses released.")  In *Allie*, the government filed a motion fifty-four days into the alien

9   witnesses' incarceration, seeking to extend the detention of the witnesses or alternatively for

10  permission to depose them. The sixtieth day of the alien witnesses' detention would have

11  occurred a mere ten days before the trial. The Magistrate denied the government's request to

12  extend the detention of the alien witnesses but permitted the government to depose the witnesses.

13  The depositions were videotaped and transcribed, and their use at trial was ultimately upheld by

14  the Fifth Circuit. *Id.,* 978 F.2d at 1403.

15      The Southern District of Texas promulgated a similar rule, based on the Western District

16  rule, which limited material witness detentions to **forty-five days** and required the Rule 15

17  deposition to be taken within **ten days** of the Court's order authorizing the deposition.[13] *Aguilar-*

18

19  ───────────────

20  [13]    "Recognizing the need for a comprehensive plan," the district court entered a standing
    order on July 15, 1988, governing the handling of material witnesses in the Brownsville Division
    of the Southern District of Texas. Following the lead of the Western District of Texas, the
21  district court's order required, among other things: (1) that counsel be appointed to represent
    material witnesses; (2) that the witness, the government, or the criminal defendant can move the
22  court to order that the material witness be deposed, said motion to be referred to a United States
    Magistrate Judge for disposition; (3) that a deposition shall be ordered absent conclusive proof
23  that the release of the material witness would result in a failure of justice; (4) that the deposition
    be conducted **within ten days** of the magistrate's order requiring it and that the witness be
24  released within twenty-four hours after the deposition; (5) that a decision by the magistrate to
    detain the material witness pending trial rather than depose him, or overruling any objection to
25  the deposition procedure shall be reviewable by the District Court; and (6) that the material
    witness be released after forty-five days, absent a district court ruling that further detention is
26  necessary. *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 415 (5th Cir. Tex. 1992).

27

28  ───────────────
                                    -16-

1   *Ayala v. Ruiz*, 973 F.2d 411 (5th Cir. 1992), in discussing the Southern District's standing order,

2   noted that the "district court order established a procedural framework for implementing [§

3   3144]. Other than commanding that the material witnesses be released after forty-five days and

4   specifying certain time limitations, the district court's standing order . . . tracked the requirements

5   of § 3144 and Rule 15(a)." *Id.*

6          Court decisions have similarly expressed the notion that the amount of time that is

7   "reasonable" should be measured in days. In *Torres-Ruiz v. United States Dist. Court*, 120 F. 3d

8   933 (9th Cir. 1997), the Ninth Circuit granted the material witnesses' petition for a writ of

9   mandamus requesting that the district court be ordered to schedule the taking of their videotaped

10  depositions under 18 U.S.C. section 3144. The Court emphasized that the witnesses, the sole

11  support for their families in Mexico, were detained for over **sixty days** as material witnesses in

12  an alien smuggling prosecution. The Court noted that the continued detention of the material

13  witnesses whose testimony could be adequately secured by videotaped deposition caused

14  an extreme hardship on their families.

15         In *United States v. Lai Fa Chen*, 214 F.R.D. 578, 579 (N.D.Cal. 2003), Magistrate Judge

16  Seeborg authorized Rule 15 depositions of foreign nationals who had been detained as material

17  witnesses for "at least two months." He noted that "18 U.S.C. § 3144 prohibits detention of

18  material witnesses if their testimony can be secured by deposition." Judge Seeborg found

19  persuasive the reasoning of the Fourth Circuit in *United States v. Rivera*, 859 F.2d 1204 (4th Cir.

20  1988) in approving a motion by a material witness to have his deposition taken so that he may be

21  released: "Exceptional circumstances have been shown in that the witnesses are being

22  incarcerated awaiting a trial. And humanitarian considerations alone demand that something be

23  done to release them from incarceration, when their only purpose for being incarcerated is to be

24  witnesses." *Rivera*, 859 F.2d at 1206, quoted in *Lai Fa Chen*, 214 F.R.D. at 580.

25         In *Rivera*, the Fourth Circuit affirmed a district court decision ordering Rule 15

26  depositions of Mexican nationals who were being held as material witnesses to an immigrant

27  smuggling operation. The illegal alien witnesses could not arrange the posting of a bond and

28

-17-

1    they were retained in custody for a period of approximately **three weeks**. An attorney was

2    appointed for the witness aliens, and shortly thereafter he made a motion to have their testimony

3    taken. The motion also asked that the illegal aliens be released from custody and allowed to

4    leave the country. The trial judge granted the motion, and the Fourth Circuit affirmed the ruling.

5    *United States v. Rivera*, 859 F.2d 1204, 1205-1206 (4th Cir. 1988).

6          While the most onerous and oppressive detentions involve incarceration, release on bail

7    under conditions which restrict travel and impose other obligations on the witness also most

8    certainly constitute significant impairment of liberty interests and are also unacceptable unless

9    limited in duration. While Captain Sun is not in actual custody, he remains unable to travel, to

10   return home, or to return to work, all obviously indicia of very significant curtailment of his

11   liberty. Unlike United States citizens and other witnesses who live nearby, meaning that they can

12   return to their community to work and continue their lives, Captain Sun's life has been placed on

13   hold with no indication of when his detention will end. Instead of being at home with his friends

14   and family or working to further his career, he has been living in a place completely foreign to

15   him, where he knows no-one, at the whim and mercy of proceedings beyond his control. The

16   extraordinary length of time that he has been detained here in the United States, unable to travel

17   home, renders his continued detention under the material witness statute illegal. His deposition

18   should be taken forthwith – within 10 days or less from the next court hearing – and he should be

19   released immediately thereafter.

20

21                                          **IX.**

22          **THERE IS NO VALID REASON WHY CAPTAIN SUN'S DEPOSITION**

23                         **CANNOT BE TAKEN FORTHWITH**

24          The defendants have argued and will no doubt argue in response to this submission that

25   either the release of the witnesses or the taking of their depositions in the very near future will be

26   unfair to them and deprive them of important trial rights, including their rights to confront

27   witnesses against them. Specifically, defendant Fleet Management has repeatedly stated to the

28   -18-

1    Court that "we are not yet in a position to advise when we can be reasonably ready to take

2    [deposition] testimony." *See* Letter dated 8/25/08 from John Cox, Esq. to Magistrate Judge

3    Spero, regarding emergency application for travel order as to Zong Bin Li (docket document 65).

4    Given the plight of the material witnesses, failure to schedule their depositions forthwith would

5    result in a miscarriage of justice. Factually and legally, there is no valid reason why Captain

6    Sun's deposition cannot be taken forthwith.

7        The defendants raised similar arguments in *United States v. Lai Fa Chen*, 214 F.R.D. 578.

8    There, they made several arguments in support of their contention that "criminal depositions at

9    this early stage of the case would be unfair." Judge Seeborg rejected the defense contentions,

10    noting that: "The statutory scheme underlying Rule 15 and Section 3144 sanctions early

11    depositions of material witnesses who may later be deported or flee from the jurisdiction of the

12    district court. Implicit in this structure is the recognition that while live trial testimony is

13    preferable, in these exceptional circumstances, criminal depositions are nonetheless generally

14    permissible notwithstanding the limitations of the procedure."

15        The defendants' argument in this case is simply that nothing short (or much short) of trial

16    testimony by the material witnesses will do. That position is not tenable in a case like this, where

17    the witnesses have now been here for almost a year. Further, it is not compatible with the

18    wording of the statute, the purpose of which is to secure the witness's "testimony", not his body.

19    The wording of the statute explicitly mandates that the witnesses' testimony be taken by way of

20    deposition, not that they be detained here until trial.

21        A court can only deny a motion by a witness to have his deposition taken if the deposition

22    would not serve as an adequate substitute for the witness' live testimony. 18 U.S.C. § 3144;

23    Fed.R.Crim.P. 15(a); *Torres-Ruiz v. U.S. District Court*, 120 F.3d 933, 935 (9th Cir. 1997)

24    (ordering the district court to schedule videotape depositions as soon as possible); *Aguilar-Ayala*

25    *v. Ruiz*, 973 F.2d 411, 413 (5th Cir. 1992) (appeal from a denial of attorney fees after the

26    witnesses obtained relief in the district court). This simply means that the deposition must be

27    admissible over any objection under the Federal Rules of Evidence or the Confrontation Clause

28

-19-

1    of the Sixth Amendment. *Aguilar-Ayala*, 973 F.2d at 413. Once the deposition has been taken

2    and subscribed, the witness must be released unless his continued detention is necessary to

3    prevent a failure of justice. 18 U.S.C. § 3144; Fed.R.Crim.P. 15(a); *Torres-Ruiz*, 20 F.3d at 935;

4    *Aguilar-Ayala*, 973 F.2d at 413.

5         Even where a criminal defendant's confrontation rights are at stake courts have found the

6    interest in *live* testimony at trial does not always override a witness's liberty interest in remaining

7    free from detention. *See, e.g. Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 412 (5th Cir. 1992) (noting

8    that "[i]f the deposition would prove admissible over any objection under the Confrontation

9    Clause of the United States Constitution or the Federal Rules of Evidence, then the material

10   witness must be deposed rather than detained"); *United States v. Eufracio-Torres*, 890 F.2d 266,

11   269 (10th Cir. 1989) (holding that use of deposition testimony of illegal aliens in criminal trial

12   was proper after weighing the right of the accused to confront witnesses against him against the

13   witnesses' due process rights).

14        As in this case, the defendants in the *Lai Fa Chen* case proffered numerous examples of

15   how they will not be able effectively to impeach or cross-examine the material witnesses until

16   they had been given a chance to conduct further investigation. Judge Seeborg ruled that:

17            These arguments fail to support the contention that Rule 15 depositions should not
             proceed. Rather, they attack the ultimate admissibility of the deposition testimony
18            at trial. While it is true that "the Confrontation Clause guarantees an opportunity
             for effective cross-examination," this particular inquiry is not before the Court. The
19            presiding district judge will ultimately decide the constitutional sufficiency of any
             proposed deposition testimony offered at trial.
20

21   *Id.* at 581.[14]

22        Law and equity demand that the depositions of Captain Sun and the other material

23   witnesses should be taken forthwith. As noted by Judge Seeborg in *Lai Fa Chen*, the trial judge

24   will ultimately determine whether, or what portions of, the depositions will be admissible at trial.

25

26   _____

27   [14]    Judge Seeborg ordered the parties to submit a deposition schedule to the Court within
     seven days. *Id.*

28

1    An attempt now to ensure that the depositions, when finally taken, will simulate as closely as

2    possible live trial testimony is misplaced. The issue of admissibility is premature, and cannot be

3    determined at this point in time. "Only when deposition testimony is sought to be introduced in

4    evidence are the defendant's confrontation rights truly implicated. Before then the process is

5    simply one of preserving testimony for *possible* use." *United States v. Dragoul,* 1 F.3d 1546,

6    1554 (11th Cir. 1993) (emphasis in original). As long as **adequate** assurances are made now that

7    the depositions are meaningful (and they can be at this point, where the case has gone on for far

8    too long), the questions of admissibility will remain for another day and another judge.

9         As noted above, section 3144 requires only that the deposition taken be "adequate." In

10   balancing the interests of the government, the defendants and the witnesses, there will necessarily

11   be some compromise on all sides. It is only required that the depositions be an **adequate** (not

12   perfect) substitute for trial testimony. The trial judge will have the opportunity to properly

13   balance the interests of the government and the defense in determining admissibility. There are

14   practical methods to ensure that the procedures adopted in this case are fair to all sides. For

15   example, it is possible to conceive that fairness will require that the government, whose charging

16   decisions are largely responsible for the length of time it will take before trial, to lose the benefit

17   of some of the witnesses' testimony, if it can be shown that the defense did not in fact have

18   adequate time to prepare for the depositions, or was deprived of certain discovery or other

19   information in the possession of the government which it should have been provided and been

20   able to use at the time of the depositions. On the other hand, if it is shown that the defense failed

21   to pose questions of the witnesses which it reasonably had the opportunity to pose, the defense

22   will likely suffer the consequences of that failure. In other words, and without engaging in

23   rampant speculation as to what could potentially occur at the future depositions and in the pretrial

24   and trial rulings of the district court, it is evident that the law requires the deposition of Captain

25   Sun to be taken forthwith.

26        Further, factually, it is evident that the questioning at deposition at this time, while

27   perhaps not as perfect as the defendants would strive to make their trial cross-examination many

28

1   months hence, would clearly be more than adequate to ensure that the defendants' constitutional

2   rights are preserved.  The statements provided by the government, which have been provided to

3   the defendants, provide a road map for the deposition of Captain Sun and the other witnesses.  In

4   addition, there is a lengthy voice recorded tape (VDR) and transcript of what was occurring on

5   deck before, during and after the allision, as well as computer images that track every turn and

6   movement of the vessel.  Even without fully developed expert testimony, it is readily apparent

7   both what the legal issues are in this case, and what the subject matter and scope of each

8   witness's role and knowledge was regarding the allision.  For example, Captain Sun can be

9   deposed regarding his background, training and experience in regard to the vessel and its

10  equipment, his observations and actions on the day of the allision, and his conduct after the

11  allision, including the timing and manner in which documents were completed.  Such factual

12  details may be ascertained irrespective of what the government or defense experts ultimately

13  opine regarding the proper standard of care and level of training the crew should have possessed.

14  Captain Sun is a percipient witness in possession of factual information.  He is not an expert

15  witness, and his testimony will not change based on what either side argues or advocates the

16  proper standards to be.[15]  Expert witnesses for each of the parties can later opine as to the import

17  of the facts provided by Captain Sun, but the expert testimony does not need to be fixed before

18  his deposition can be taken.

19  ///

20  ///

21  ///

22  ///

23

24  [15]    In fact, further delays can only serve to detract from the reliability of the witnesses'
    testimony.  The longer they are forced to remain here, the more coercive the circumstances
25  become, and the more likely it will be that their testimony will be tainted by their unavoidable
    resentment at being forced to remain here for over a year. And, of course, memories and
26  recollections fade over time.

27

28

SUBMISSION BY MATERIAL WITNESS CAPTAIN MAO CAI SUN IN SUPPORT OF RELEASE
Case No. 07-90552-MISC-VRW (JCS)

1    Thus, at the very least, Captain Sun's deposition should be ordered taken forthwith, and

2    he be permitted to return home within thirty days.

3    DATED:  September 2, 2008                    Respectfully submitted,

4                                                SCHWARTZ & CERA LLP

5

6                                                        /s/
                                                DOUGLAS R. SCHWARTZ
7                                               PETRA M. REINECKE
                                                Attorneys for Witness
8                                               MAO CAI SUN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUBMISSION BY MATERIAL WITNESS CAPTAIN MAO CAI SUN IN SUPPORT OF RELEASE
Case No. 07-90552-MISC-VRW (JCS)