JOSEPH P. RUSSONIELLO
United States Attorney
BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division
STACEY P. GEIS (CASBN 181444)
JONATHAN SCHMIDT (CABSN 230646)
Assistant United States Attorneys
450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-6776 (tel)
(415) 436-7234 (fax)
Jonathan.Schmidt@usdoj.gov

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Richard A. Udell
Senior Trial Attorney
Environmental Crimes Section
P.O. Box 23985
L'Enfant Plaza Station
Washington, DC 20004
(202) 305-0361 (tel)
(202) 514-8865 (fax)
Richard.Udell@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN JOSEPH COTA, and<br>FLEET MANAGEMENT LIMITED,<br><br>Defendants | CR 07-90522-MISC-VRW (JCS)<br>CR 08-0160 SI<br><br>RESPONSE TO MOTIONS FOR RELEASE OF WITNESSES<br><br>Date: September 18, 2008<br>Rime: 2:00 p.m.<br>Judge: Hon. Joseph C. Spero |

**INTRODUCTION**

The United States submits this Response to inform the Court of its position on the deposition of the material witnesses and the status of discovery in the case.

The United States proposes that the October 1, 2008, deposition of the bosun Liang Xian Zheng and the October 3 deposition of helmsman Zing Bin Li proceed as scheduled. If trial remains set for November 17, 2008, then the United States agrees with the previously stated position of defendant Cota that the remaining four witnesses testify at the trial. In the event that trial is continued, then the United States agrees with the position of the material witnesses that depositions should take place as soon as possible and recommends that they proceed on November 17, 2008.

Neither the discovery, nor the issues in the case are so complicated that the parties cannot proceed on November 17, 2008. The United States anticipates that Captain Cota will agree with this timetable and Fleet Management Limited (Fleet) – citing voluminous discovery and complicated issues – will oppose this schedule.[1]

**BACKGROUND**[2]

This case centers on the *M/V Cosco Busan's* November 7, 2007 allision with the Bay

---

[1] Given that the United States agrees that the material witness testimony should be taken as soon as practical, the United States respectfully recommends that the Court need not address the broader constitutional issues raised in Captain Sun's Motion for Release. However, in the event that the Court intends to reach those issues, then the United States requests a reasonable opportunity to brief those issues. As set forth in 18 U.S.C. § 3144, the release of a material witness may be delayed for a "reasonable period of time." This case is unique because the delay was partially brought on by the material witnesses' evasiveness and participation in obstruction of justice. The continued presence of the material witnesses is required in order to protect the constitutional rights of defendants Cota and Fleet. Balanced against these needs are the humanitarian concerns of the continued detention. The government has attempted to address these concerns as fully as possible. Unlike most material witness case, these witnesses have never been jailed. Instead they have been housed in nice apartments or hotel rooms, received per diem for food, continue to receive their salary, receive an additional $1200 a month in witness fees and have the right to seek additional employment. Under these circumstances, the United States submits that the current status of the material witnesses is reasonable.

[2] The facts in this section are supported by Christopher Tribolet's declaration attached as Exhibit 1.

2

Bridge and the resulting oil spill and migratory bird deaths. Both the ship's pilot – Captain John Cota – and its operator – Fleet –  were charged in a July 22, 2008, superseding indictment with violations of the Clean Water Act and the Migratory Bird Treaty Act. Fleet was also charged with three false statement counts and three obstruction of justice counts related to the creation of false passage plans. Captain Cota was also charged with two false statement counts for making false statements in his physical examination reports. .

The Clean Water Act charge alleges that Captain Cota and Fleet negligently discharged oil into the bay when they caused the *M/V Cosco Busan* to hit the Bay Bridge.

The material witnesses are pertinent to the Clean Water Act and Migratory Bird Treaty Act charges as well as the false statement and obstruction charges against Fleet. The depositions of these witnesses has been delayed to allow the parties to review discovery.

The United States has given the defense more than 100 discs and four expert reports. Still the discovery in this case is not as overwhelming nor as complex as the volume suggests. As will be explained below, much of the discovery is repetitive and irrelevant. In addition the number of discs is a poor proxy for the volume of data, as many discs are largely empty. Moreover, the bulk of the pertinent discovery was initially given to the United States by Fleet. Finally, and most importantly, Fleet was aware of the key issues in this case – their role in the allision and the standard of care almost immediately after the allision.

**1. The Discovery**

The United States has disclosed about 110 discs and 2420 pages of documents. Much of the discovery is repetitive. For example, the several Federal agencies worked on downloading, transcribing and enhancing the sound quality of the bridge audio. This material was turned over in various iterations, resulting in twelve discs containing either audio or a transcript of the bridge audio. In addition, many of the discs are largely empty. For example one disc contains nothing but an image of a nautical chart; another contains

3

nothing more than an image of a ship diagram. Finally, many of the discs are irrelevant to the criminal case. For example two discs contain images of thank-you cards sent to the Coast Guard from local schools.

The discovery can be divided into three categories or subject matters: (1) pre-allision, (2) the allision, and (3) post-allision.

    a.    **Pre-allision Discovery**.

The pre-allision discovery consists of Fleet's record related to the operation and management of the ship, the training of the crew and the two transits taken before the allision. This discovery is based on documents Fleet gave to the United States in January 2008, and a handful of interviews. Presumably Fleet was familiar with these documents already in January 2008.

    b.    **Allision Discovery**.

The allision discovery relates to approximately two hours of activity on the morning of November 7, 2007. The pilot boarded the ship at about 6:20 that morning and the ship hit the bridge about two hours later at 8:30 in the morning. The vessel's transit time from start to finish was approximately 45 minutes.

The evidence related to the allision consists primarily of the following:

- About two hours of data from the ship's voyage data recorder, including radar, bridge audio and GPS information;
- data from the electronic charts system;
- the ship's paper chart used for the transit;
- about two hours of data from the Vessel Traffic Service, consisting mainly of radio broadcasts and images of the Bay that morning;
- the ships various logs and procedures, and
- a handful of witness interviews.

Except for the witness interviews, and possibly the paper chart and Vessel Traffic Service data, all this information was and has been in Fleet's possession since the allision. Fleet was familiar with most of data and its significance as early as December 5, 2007.

4

For example, for the first few weeks after the allision, Fleet personnel and its lawyers were onboard the *M/V Cosco Busan* collecting data, and assisting various investigators. Similarly, in a video conference on December 5, 2007, Fleet's attorneys played back radar images matched with bridge audio from the morning of November 7, 2007.

    **c. Post-allision Discovery**.

The post-allision documents related to the initial emergency response, the clean-up efforts and post incident investigations into the adequacy of the government's response. The bulk of the discovery falls into the post-allision category. These documents are irrelevant to the testimony of the six material witnesses.

There are four major sources of discovery:

1. Fleet,
2. National Traffic and Safety Board (NTSB),
3. United States Coast Guard - San Francisco Sector (SF - USCG ), and
4. The Incident Command Post.

Fleet's records primarily pertain to pre-allision events and information. The NTSB documents pertain primarily to the allision and post- allision events. The SF-USCG records pertain primarily to post-allision events but contain documents related to the allision. And the Incident Command Post records, which consume seventy discs, exclusively pertain to post-allision events. The United States on March 14, 2008 disclosed to Fleet the first thirty-three and most pertinent discs , as part of the civil litigation.

The bulk of the remaining discovery is audio visual materials, like the radar, the electronic chart, the vessel traffic service broadcasts and the audio from the voyage data recorder. Finally the remaining discovery relates to the false passage plans (3 discs) and Captain Cota's false statements in January 2006 and January 2007. Captain Cota's statements do not relate to the material witnesses and the trial on the statements has been severed from the trial on the Clean Water Act and Migratory Bird Act violations.

Thus while the total discovery is voluminous, the discovery related to the material

5

1  witnesses is circumscribed.  Additionally, though discovery was only completed on
2  August 18, 2008, Fleet had possession of and reviewed some pertinent discovery much
3  earlier.

**2.  Fleets' engagement in the Investigation**

Because of its position as the operator of the *M/V Cosco Busan,* and because it is the defendant in multiple civil suits, Fleet and its lawyers have been following the criminal investigations and various civil investigations, including one by the National Transportation Safety Board since November 7, 2007, and consequently they have been alert to the issues of negligence and the standard of care since at least late 2007.  In their pleadings and discussions with the government Fleet has shown a command of the facts and issues in the case.

The allegation of negligence  made in the criminal indictment was made much earlier in civil suits.  By late November, Fleet, the ship's operator, was the subject of a civil lawsuit alleging, among other things, that  it negligently caused the November 7, 2007, oil spill.  The law firm representing Fleet is also representing Regal Stone, the ship owner, who was also the subject of several lawsuits alleging, among other things, negligence and filed in November 2007.   These civil suits surely alerted Fleet to the issues in this case.

Fleet was also aware of the issues in the case through its involvement in the NTSB investigation.  The NTSB began an investigation into the causes of the allision in early November 2007.  Fleet was a "designated party," which means they have a right to participate in the investigation, including participating in interviews and commenting on reports before they are made public.  Fleet exercised that right.  For example, they participated in several official interviews related to the allision including the interview of Captain Cota, Vessel Traffic Service personnel, and an expert on electronic charts and radar. A Fleet manager also offered testimony to the NTSB.

Even without its participation in civil litigation and the NTSB probe, Fleet is familiar with the standard of care for merchant ships.  Fleet operates more than 190  merchant ships and is familiar with the standard of care for operating merchant ships.  The Bridge

6

Procedures Manual and Shipboard Management Manual aboard the *M/V Cosco Busan*, according to the United State's expert, reflect the contemporary standard of care for merchant ships.

In addition to generally knowing the standard of care, Fleet has been aware of the standard of care and how it relates to this case since soon after the allision.  Immediately after the allision Fleet had two audits.  Fleet conducted an internal audit to determine whether they complied with the standards in their Safety Management System, which includes the Bridge Procedures Manual.  Similarly they were subject to an external audit reviewing their compliance with the standard of care.

Thus, Fleet has been aware of and conversant with the issues of negligence and standard of care since early last winter.

## CONCLUSION

Captain Cota was initially charged on March 17, 2008.  Before Fleet entered the case depositions were scheduled to begin on July 21, 2008, or four months after the initial complaint was filed.  The November 17, 2008 trial will be four months after Fleet was charged.  If four months were sufficient for Captain Cota to prepare for trial it should also be sufficient for Fleet.  The government asks that the depositions proceed as planned and the remaining material witnesses provide testimony at the November 17, 2008 trial.  Should the trial date be vacated, deposition of the remaining witnesses should go forward on November 17, 2008.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney
BRIAN J. STRETCH
Chief, Criminal Division


By:_____S/S_____
JONATHAN SCHMIDT
Assistant United States Attorney

7

1  RONALD J. TENPAS
   Assistant Attorney General
2  Environment and Natural Resources
   Division
3  United States Department of Justice

4

5  By:_____S/S_____
              RICHARD A. UDELL
6      Senior Trial Attorney
       Environmental Crimes Section
7

8

9
   DATED: September 12, 2008____
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28